## Kizirian *v.* United Benefit Life Insurance Company, Appellant.

Argued November 15, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Walter B. Gibbons,* for appellant.

*Maxwell L. Davis,* with him *Herman S. Davis,* and *Davis & Davis,* for appellee.

OPINION BY MR. JUSTICE BELL, January 3, 1956:

Ashen Kizirian, beneficiary in the life insurance policy issued on the life of her husband, John A. Kizirian, on November 28, 1952, in the sum of $5,000., brought an action in assumpsit to recover the full amount of the policy. The insured died of cancer on May 4, 1953.

Defendant denied liability under the policy for the reason that certain answers of the insured were false and fraudulent. The jury returned a verdict in favor of the plaintiff and the defendant filed a motion for judgment non obstante veredicto which was dismissed.

The insured's application contained the following pertinent questions and answers: "8.(f) Are you sound physically and mentally? Yes." "10.(b) Have you had any local or constitutional disease within the past 5

years? None. . . (d) Have you ever had, or been advised to have any surgical operation? Yes. (e) Have you ever been under observation, care or treatment in any hospital, sanitarium, asylum, or similar institution? No. (f) Are you now in good health? Yes". "11. Name below all causes for which you have consulted a physician in the last ten years:

| Illness or Injury | No. of Attacks | Date | Severity and Duration | Any Remaining effects | Attending Physician's Name and Address |
|---|---|---|---|---|---|
| Hernia operation October 1950 | | | 5 weeks | none | Dr. Kallen 5012 Spruce Phila. Pa." |

"13. Do you hereby apply to the United Benefit Life Insurance Company for a policy to be *issued solely and entirely in reliance upon the written answers\** to the foregoing questions, and do you agree that the Company is not bound by any statement made by or to any agent unless written herein; . . .? Yes."

With one exception all of those answers were knowingly false. The insured was operated on in October 1950 but not by Dr. Kallen, though we regard this as an immaterial mistake. Plaintiff admitted and the hospital records showed that the insured was suffering from cancer of the colon at the time the application for life insurance was applied for and that he underwent an operation for this cancerous condition on September 22, 1952. The beneficiary and Dr. Kallen knew about the insured's cancer, but neither of them informed the insured that he had cancer, although of course the insured knew he had some intestinal sickness. Where the plaintiff and the Court below fell into error was in believing that the defense was based upon plaintiff's knowledge that he was suffering from can-

---

* Italics throughout, ours.

cer. If that had been the issue it would unquestionably have been a matter for the jury.

Defendant's motion for judgment non obstante veredicto is predicated upon the following: (1) It was agreed by the parties that the insured was in, and *knew he was in, St. Agnes Hospital from September 22 to October 18, 1952* (during which time he underwent a carcinamatosis as above mentioned for the removal of cancer of the colon) ;

(2) Dr. Kallen first treated the insured on October 18, 1951 and again on September 22, 1952, at which time he sent Kizirian to St. Agnes Hospital. Thereafter Dr. Kallen saw the insured daily in the hospital until his release therefrom on October 18, 1952. He continued to treat the insured and saw him on October 20, 23, 25, 27 and 30, November 4, 7, 10, 13, 17, 24 and *November 28, 1952,* the last date being the date on which Kizirian signed the application for the insurance policy;

(3) The insured knew at the time he made his application that his statement that he was sound, physically and mentally, was false;

(4) He knew that his statement that he had not had any local or constitutional disease within the past five years was false; and

(5) He knew that his statement that he was now in good health was false and it is of course crystal clear that the insured knew that his statement that the only causes for which he had consulted a physician in the last ten years, namely a hernia operation in 1950, was false.

Without any consideration of the oral testimony, the *hospital records\* clearly proved the falsity* of some

---

\* In *Platt v. John Hancock Mutual Life Insurance Company,* 361 Pa. 652, 654, 66 A. 2d 266, the Court said: "The hospital records were properly admitted as documentary evidence to show the

of the insured's material statements and it is likewise clear these were *fraudulently,* not mistakenly, made. The policy clearly and unequivocally provided that it was issued "solely and entirely in reliance upon the written answers to the foregoing questions", a number of which we repeat the hospital records proved (and the plaintiff admitted) were absolutely false.

The rule here applicable is clearly set forth in the leading case of *Evans v. Penn Mutual Life Insurance Company,* 322 Pa. 547, 553, 186 A. 133: "The insurer must thus establish, in order to avoid the policy in the case of representations, that the statements relied on were falsely and fraudulently made. It is sufficient to show that they were false in fact and that insured knew they were false when he made them (see Lilly v. Metro. Life Ins. Co., supra, page 251; Stein v. N. Y. Life Ins. Co., supra, page 227), since *an answer known by insured to be false when made is presumptively fraudulent* . . . These principles may be summarized as follows . . . (2) Where the statements are made representations, the insurer, to avoid the policy, must show that they were false and insured knew they were false or otherwise acted in bad faith in making them. (3) If such falsity and the requisite bad faith affirmatively appear (a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer. (4) But whenever disputed questions of fact are presented by conflicting evidence, whether documentary or oral, or whenever the insurer's defense depends upon the testi-

---

fact of hospitalization, treatment prescribed and symptoms given: Act of May 4, 1939, P. L. 42, 28 PS §91b; Freedman v. The Mutual Life Insurance Company of New York, supra, 412."

mony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury, subject to the trial court's power to award a new trial as often as in its sound discretion it may think the interests of justice require . . ."

It was undoubtedly material to the risk for the Company to have correct and truthful information as to the existing health, prior health, hospitalization and causes for which the insured consulted a physician in the last ten years.

In *Prevete v. Metropolitan Life Insurance Company,* 343 Pa. 365, 368, 22 A. 2d 691, the Court said: "Inquiries as to prior medical attendance are material to the risk and false answers thereto must of necessity permit the insurer to avoid the policy: Reeder v. Metropolitan Life Ins. Co., 340 Pa. 503, 507."

In *Derr v. Mutual Life Ins. Co.,* 351 Pa. 554, 559, 41 A. 2d 542, the Court said: "In Freedman v. Mut. Life Ins. Co. of N. Y., 342 Pa. 404, at p. 408, 21 A. 2d 81, we said: 'The rule governing cases of this sort was set forth in Evans v. Penn Mutual Life Ins. Co., 322 Pa. 547 (and reiterated in Indovina v. Metropolitan Life Ins. Co., 334 Pa. 167, Bailey v. Pacific Mutual Life Ins. Co., 336 Pa. 62, and Reeder v. Metropolitan Life Ins. Co., 340 Pa. 503), at p. 555: "Where it affirmatively appears, from sufficient documentary evidence, that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of the insured, as where false answers are shown to have been given by the insured *under such circumstances that he must have been aware of their falsity,* the court may direct a verdict or enter judgment for the insurer." ' "

Under the facts in this case it is clear from the hospital records, as well as from plaintiff's admissions that the insured made false and fraudulent statements which were material to the risk and thus prevent recovery on

the policy. There is no merit in plaintiff's contention that the false statements were inadvertent and the concealments unintentional and consequently these questions should be left to the jury; nor was there any duty upon the Insurance Company, under the facts in this case, to investigate and determine for itself the truth or falisty of the material statements made by the insured.

The judgment of the Court below is reversed, and judgment is here entered for the defendant non obstante veredicto.